IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JOSEPH FLOWERS,

      Petitioner,

  v.

F. FOULK, Warden,

      Respondent.

_____/

No. C 14-0589 CW

ORDER GRANTING IN
PART MOTION TO
DISMISS

(Docket No. 49)

A jury convicted Petitioner Joseph Flowers, a state prisoner, of robbing Wei Mei Chen, Wendy Zhang, and Lin "Lili" Juan--three masseuses working at a San Rafael massage parlor--and of kidnapping Zhang.  Petitioner filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his state criminal conviction and asserting six claims of constitutional error, with subclaims.  The matter comes before the Court on Respondent's motion to dismiss the petition and on several motions filed by Petitioner.

BACKGROUND

The following background facts, including footnotes, are taken from the California Court of Appeal decision denying Petitioner's direct appeal.

> On December 24, 2008, two men robbed the New Day Health Spa in San Rafael and kidnapped one of the three female masseuses working there.  By amended information filed July 30, 2009, prosecutors charged defendant and his alleged accomplice, Douglas Patterson, with kidnapping, kidnapping for robbery, second degree burglary, and three counts of robbery—one count per masseuse.

An eight-day jury trial began on April 29, 2010 and concluded on May 11, 2010.

Interior and exterior surveillance cameras at the massage parlor captured part of the robbery and kidnapping.  At trial, the prosecution played the surveillance tape during the testimony of massage parlor manager, Ms. Xiu He; one of the masseuses, Chen;[1] and Patterson, who on the first day of trial entered a plea bargain to lesser charges and agreed to testify for the state.

The interior surveillance tape showed defendant drawing a gun on the three masseuses and commanding them to get on the floor.  The tape then showed defendant pointing his gun at Juan's head and grabbing her hair with his free hand.  Patterson[2] and Chen both testified defendant demanded money from Juan and led her into a back room, out of the camera's view, so she could get "her money" for him.  This back room, explained Chen, contained lockers where the masseuses kept personal items, such as their money.  From the back room, both Patterson and Chen could hear defendant demand money, and indeed, defendant emerged from the back room with, according to Patterson, about "two or three" purses, and according to Chen, "a bag with money inside."

The tape next showed this scenario repeat, but with defendant dragging Chen into the back room by her hair at gunpoint.  While in the back room, testified Chen, defendant forced her to open several lockers and defendant took money from a pink bag belonging to Zhang and about $900 in personal and work money from Chen's purse.

When defendant returned with Chen, he began to repeat the process with the last masseuse, Zhang, grabbing her hair and pointing his gun at her head. According to Chen, Zhang pointed at her pink bag and tried to tell defendant he already had her money. Defendant then, with the gun still pointed at Zhang's head, dragged her outside.  Patterson, by then waiting for defendant in a parked car, observed defendant emerge from the massage parlor and force Zhang at gunpoint into the car.  The exterior surveillance camera captured this, as well.

Patterson drove away, Zhang and defendant in the back seat, and defendant with his gun trained on Zhang.

---

[1] The other masseuses did not testify at trial.

[2] It appears Patterson occasionally confused the names of the masseuses in his testimony.

United States District Court
For the Northern District of California

During the drive, Patterson saw defendant rummaging through his takings from the massage parlor. Patterson testified he convinced defendant to let Zhang go. They left Zhang in a négligée at Point Richmond in the rain.

A week after the robbery, Chen received an envelope in the mail with her checkbook and a letter demanding she provide an account pin number to someone who would call her. A police sergeant testified defendant's fingerprints were on the envelope and letter. At trial, Chen identified defendant as the perpetrator. She had also picked defendant's photo out of a lineup during the investigation.

The massage parlor manager, He, testified $3,000 was lost in the robbery. This sum included, according to He, money belonging to each of the three women (who had large sums of cash with them to pay for rent and food expenses associated with recently moving into state), and also $200 to $300 in business revenue. The parlor keeps two-thirds of business revenues and the masseuses split the other third at the end of each day.

Just before trial, the court had granted a motion in limine prohibiting reference during trial "to [defendant's] prior record or prior felony conviction or prison incarceration" or "to his being on a parole hold or in custody." The court had further ordered counsel to admonish their witnesses about such pretrial rulings. Despite this, the prosecutor failed to admonish Lisa Holton, a corporal at the San Rafael Police Department assigned to investigate the robberies and kidnapping. Holton, while testifying midtrial, stated in passing defendant was a "parolee at large." Specifically, when asked why she did not use a particular photograph in the lineup she provided to Chen, Holton answered: "Because I knew that I was going to show Ms. Chen a line-up. I had spoken to her on the day that this information was released to the media. I tried to get her into the police department to show her the photo line-up that day. She told me she was going to be out of town and that she wasn't going to be able to meet with me until the following week. [¶] I felt that because of the weapon involved and the fact that we had released some of the surveillance video to the media already, there is a significant danger to the public, and I didn't want to hesitate in getting this information out to the public for a public safety reason that we have a parolee at large who is possibly still armed in public. I felt that there was an urgency in releasing that to the media."

Following a bench conference, the trial court instructed the jury to "disregard the portion of the answer that referred to the term parolee. That's not for your consideration here. Don't be biased by it or

3

make any inferences from it.  It's not part of this case and has no bearing on your consideration of the issues here.  Disregard that in its entirety."

Defendant moved for a mistrial. The trial court, however, found the prosecutor did not intend to elicit the testimony, believed the jury would abide by the instruction to ignore the testimony, noted Holton gave no details about defendant's prior conviction, and, finding no prejudice to defendant, denied the motion.

On May 11, 2010, trial concluded and the jury found defendant guilty of the charged crimes.  The trial court sentenced defendant to a life term and an additional, consecutive term of 29 years four months.  Defendant filed a timely notice of appeal.

People v. Flowers, 2012 WL 2168589, at *1-2 (Cal. Ct. App. June 15, 2012).  The California Court of Appeal affirmed the judgment, id. at *5, and the Supreme Court of California denied Petitioner's petition for review, Resp.'s Ex. 2.

On October 25, 2012, Flowers filed a habeas petition in the Superior Court of California, County of Marin.  Resp.'s Ex. 3. See also Resp.'s Exs. 4-5 (supplemental addenda filed).  The court denied the petition on December 18, 2012.  The Court of Appeal summarily denied Flowers' petition, Resp.'s Ex. 8, as did the Supreme Court of California, Resp.'s Ex. 12.  Flowers filed a second petition for habeas relief with the Supreme Court of California on February 7, 2014.  The Supreme Court denied this petition on April 9, 2014.  Resp.'s Ex. 14.

Petitioner filed the operative petition for habeas relief in this Court in June 2014.  The documents at Docket Numbers 25 and 27 together constitute the operative petition.[3]  Docket No. 32 at 3.

_____

[3] Petitioner filed a Third Amended Petition on February 5, 2016.  Because the Court did not grant leave to file an amended petition, Petitioner's June 2014 petition remains the operative one.  See Fed. R. Civ. P. 15(a)(2).

LEGAL STANDARD

A federal court may entertain a habeas petition from a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Under the Antiterrorism and Effective Death Penalty Act (AEDPA) of 1996, a district court may not grant habeas relief unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 412 (2000).

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Id. at 412-13. A state court decision is an "unreasonable application of" Supreme Court authority, that is, it falls under the second clause of § 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established

United States District Court
For the Northern District of California

federal law erroneously or incorrectly." <u>Id.</u> at 411.  Rather, the application must be "objectively unreasonable" to support granting the writ.  <u>Id.</u> at 409.  Under AEDPA, the writ may be granted only "where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents."  <u>Harrington v. Richter</u>, 562 U.S. 86, 102 (2011).

If constitutional error is found, habeas relief is warranted only if the error had a "'substantial and injurious effect or influence in determining the jury's verdict.'"  <u>Penry v. Johnson</u>, 532 U.S. 782, 795 (2001) (<u>quoting</u> <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 637 (1993)).

When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the court looks to the last reasoned opinion of the highest court to analyze whether the state judgment was erroneous under the standard of § 2254(d). <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 801-06 (1991).  In the present case, the highest court to issue a reasoned decision on Petitioner's claims is the California Superior Court.

DISCUSSION

Petitioner asserts six claims for relief, with subclaims, in his federal habeas petition; however, subsequent to the briefing on the motion to dismiss, Petitioner withdrew two claims.[4]  The

---

[4] Petitioner filed one of his withdrawals as a motion. (Docket No. 65).  That motion, as modified by his subsequently filed correction (Docket No. 67) is GRANTED.  Petitioner's claims for relief predicated on his trial counsel's alleged ineffective assistance for failing to investigate Chen Wei's background and appellate counsel's alleged ineffective assistance for failing to raise trial counsel's ineffectiveness on appeal--referred to as Claims 1(a) and part of 1(c)--are dismissed.

**United States District Court**
For the Northern District of California

remaining claims are Ground 1, ineffective assistance of counsel: (b) trial counsel was ineffective for failing to move to dismiss the kidnapping count based on a discrepancy between the victim's name as listed on the information and the victim's own recitation of her name at trial; and (c) appellate counsel was ineffective for failing to raise on appeal the ineffective assistance of trial counsel.  Ground 2, trial court errors violation of due process: (a) the trial court failed to grant a mistrial after a prosecution witness revealed that Petitioner was a parolee at large; (b) after a prosecution witness testified, in violation of a pretrial exclusionary order, that Petitioner was a pimp, the trial court failed to admonish the jury to disregard the testimony; and (c) the trial court failed to issue a ruling on the defense's pretrial <u>Aranda</u>[5]/<u>Bruton</u>[6] motion.  Ground 3, prosecutorial misconduct: (a) the prosecutor failed to disclose evidence relating to the credibility of Chen Wei; and (b) the prosecutor presented false evidence regarding the identity of the kidnap victim.  Ground 4, denial of right to counsel: Petitioner was not allowed confidential visits with trial counsel at the county jail. Ground 5, actual innocence: (a) evidence of an alibi was not presented; and (b) insufficient evidence of the identity of the kidnap victim to support the conviction of kidnapping for robbery. Ground 6: cumulative error: the cumulative effect of errors alleged in grounds 1 through 5 violated due process.

I.   Petitioner's Pending Motions

---

[5] <u>People v. Aranda</u>, 63 Cal. 2d 518 (1965).

[6] <u>Bruton v. United States</u>, 391 U.S. 123 (1968).

United States District Court
For the Northern District of California

Petitioner has filed several motions.  First, he filed "Motions of (a) Judges order for of Stipulations of grounds 2&3 doc 25, p. 5-13." (Docket No. 37).  In this motion Petitioner states that he submitted some of the pages of his petition in the wrong order, and asks that the Court read pages 5 through 6 and 10 through 13 in support of his second claim of relief involving trial court errors violating his due process rights, and to read pages 7 through 9 in support of his third claim for relief involving prosecutorial misconduct.  The motion is GRANTED and the Court will read the petition as described above.

Petitioner also filed a motion for authorization to issue several subpoenas duces tecum.  (Docket No. 44).  A habeas corpus petitioner, unlike the usual litigant, is not entitled to discovery as a matter of course.  Bracy v. Gramley, 520 U.S. 899, 903-905 (1997).  Habeas corpus petitioners may conduct discovery to the extent that "the judge in the exercise of his discretion and for good cause shown grants leave to do so, but not otherwise."  Rule 6(a) of the Rules Governing Section 2254 Cases. Good cause is shown where a petitioner demonstrates, through specific allegations, that there is reason to believe that he may be entitled to relief.  Bracy, 520 U.S. at 908-909 (quoting Harris v. Nelson, 394 U.S. 286, 300 (1969)).  In his motion, Petitioner claims that the subpoenas are necessary to prove his claim that he was denied effective assistance of counsel because he did not have confidential visits with his attorney while incarcerated in Marin County, which is claim 4 of his petition.  Petitioner's motion is DENIED.  As explained below, the Court grants Respondent's motion to dismiss claim 4 as procedurally defaulted.  Because Petitioner

United States District Court
For the Northern District of California

is not entitled to relief on this ground, he is not entitled to conduct discovery related to it.

In addition, Petitioner filed two related motions: a motion for an order "of retracking and excluding of portions of Exhibit Z(7)" and a motion "for having Exhibit Z(7) stricken from record or of retracked filed under of seal." (Docket Nos. 45 and 52). The Court construes these as motions to seal. However, as the Court already stated when denying a previous identical request, Document Z(7) does not contain confidential material, a prerequisite to permitting any document to be filed under seal. Accordingly, Petitioner's motions are DENIED.

Next, Petitioner filed a "Request for Correction of Records of Attorney General's Errors of Grounds 3(b)." (Docket No. 66). This filing is related to Respondent's motion to dismiss. However, pursuant to the District's Local Rules, once a motion is fully briefed, no additional filings are permitted without leave of the Court unless the filing party shows that the papers meet one of two specifically enumerated exceptions: parties may object to evidence presented for the first time in a reply brief and parties may file notice of any relevant judicial opinions filed after the reply brief. See Civil L. R. 7-3(d). Petitioner has not shown that he meets either exception, and after review of his filing the Court finds that he does not. As such, Petitioner's request is DENIED.

Petitioner filed two subsequent motions for leave to file documents under seal. (Docket Nos. 59 and 63). In docket number 59, Petitioner seeks to file under seal several letters addressed to his trial counsel and appellate counsel, to which he refers

collectively as exhibits V(3),[7] citing attorney-client privilege. In docket number 63, also citing attorney-client privilege, Petitioner seeks to file under seal a declaration from his appellate counsel.  Petitioner's motions to file these documents under seal are GRANTED.  If Petitioner is able to pursue claims of ineffective assistance of both trial and appellate counsel, these documents will have to be unsealed or stricken.

Finally, Petitioner filed a "Request for Default of Motion to Dismiss" in which he argues that the Court should strike as untimely Respondent's reply brief in support of his motion to dismiss.  (Docket No. 60).  This Court's Order setting the briefing schedules in this case specified that Respondent shall file a reply "within fourteen days of receipt of an opposition." (Docket No. 32).  Petitioner's opposition was received by the Court Clerk on April 24, but it was not docketed until April 27. (Docket No. 54).  Respondent received the opposition the date it was docketed, April 27.  Accordingly, the filing deadline for Respondent's reply was May 11.  Respondent filed his reply that day.  Thus, Respondent's reply is timely, and the Court DENIES Petitioner's Motion.[8]

//

_____

[7] Petitioner also filed a "request to attach of this document into record" under Exhibit V(3), Docket No. 68, which the Court grants.

[8] Petitioner also requests evidentiary hearings on several issues.  Because he does not identify any material factual disputes that would entitle him to relief if resolved in his favor, the Court denies his requests without prejudice.  See Bracy, 520 U.S. at 904-05; Pham v. Terhune, 400 F.3d 740, 743 (9th Cir. 2005).

**United States District Court**
For the Northern District of California

II.  Respondent's Motion to Dismiss

Respondent moves to dismiss the petition because, he argues, certain claims within the petition are procedurally defaulted and unexhausted.  The Court takes each argument in turn.

A. Procedural Default

Respondent argues that claims 2(b), 4 and 5(b) should be dismissed as procedurally defaulted.

"A federal habeas court will not review a claim rejected by a state court if the decision of the state court rests on a state law ground that is independent of the federal question and adequate to support the judgment." Walker v. Martin, 562 U.S. 307, 315 (2011) (internal brackets and quotation marks omitted). The state law ground may be "a procedural barrier to adjudication of the claim on the merits."  Id.

As a preliminary matter, this Court must determine whether the state court in fact disposed of the claims at issue based on a state rule.  The state court decision must "clearly and expressly" explain that its judgment rests on a state procedural bar.  Harris v. Reed, 489 U.S. 255, 263 (1989).  This "plain statement" rule applies to questions of "whether a state court has relied on an adequate and independent state ground."  Id. at 265.  As the Ninth Circuit has explained, "federal courts are to 'presume that there is no independent and adequate state ground for a state court decision when the decision fairly appears to rest primarily on federal law, or to be interwoven with federal law, and when the adequacy and independence of any possible state law ground is not clear from the face of the opinion.'"  Nitschke v. Belleque, 680 F.3d 1105, 1109 (9th Cir. 2012) (quoting Coleman v. Thompson, 501

U.S. 722, 735 (1991)).  Where the last reasoned opinion "explicitly imposes a procedural default," federal courts will "presume that a later decision rejecting the claim did not silently disregard that bar and consider the merits." Ylst, 501 U.S. at 803.

From there, the procedural default analysis proceeds in two steps.  First, the federal court must consider whether the state procedural rule the state court invoked to bar the claim is both "independent" and "adequate" to preclude federal review.  See Bennett v. Mueller, 322 F.3d 573, 580 (9th Cir. 2003).  Once the state has adequately plead the existence of an independent and adequate state procedural ground as a defense, the burden to place that defense at issue shifts to the petitioner, who "may satisfy this burden by asserting specific factual allegations that demonstrate the inadequacy of the state procedure, including citation to authority demonstrating inconsistent application of the rule." Id. at 586.  A "petitioner's burden at this stage is 'modest.'" Lee v. Jacquez, 788 F.3d 1124, 1128 (9th Cir. 2015). The burden then shifts back to the state.  "'The scope of the state's burden of proof thereafter will be measured by the specific claims of inadequacy put forth by the petitioner.'" Bennett, 322 F.3d at 584-85 (citation omitted).

If the procedural rule invoked by the state court is both adequate and independent, then the next step of the evaluation requires the federal court to consider whether the petitioner has established either "cause" for the default and "actual prejudice" as a result of the alleged violation of federal law, or whether failure to consider the claim will result in a fundamental

United States District Court
For the Northern District of California

miscarriage of justice. <u>Coleman v. Thompson</u>, 501 U.S. 722, 750 (1991). If a petitioner cannot meet this burden, then federal habeas review of that claim is barred. <u>Noltie v. Peterson</u>, 9 F.3d 802, 804-05 (9th Cir. 1993).

Respondent argues that claim 2(b), failure to admonish the jury to ignore testimony that Petitioner was a pimp, and claim 4, denial of right to counsel based on non-confidential visits, are procedurally defaulted based on a rule from <u>In re Dixon</u>, 41 Cal. 2d 756 (1953). This rule "prohibits California state courts from considering habeas claims that should have been raised on direct appeal but were omitted." <u>Lee</u>, 788 F.3d at 1126. The rule appears in the Superior Court's denial of Flowers' petition. Resp.'s Ex. 6, Super. Ct. Habeas Denial at 2. The court said,

> As Petitioner points out, the issues relating to Petitioner's ability to meet with counsel were addressed at length during pre-trial hearings. All of Petitioner's complaints, excluding his post-conviction complaints are issues are issues [sic] that could have been raised on appeal. As stated by the court in <u>People v. Tulare County Superior Court</u> (2005) 129 Cal.App.4th 324,
>> "'under the power invested in the superior courts of this state to issue <u>writs of habeas corpus</u> they are not given the authority to invade the jurisdiction of an appellate court, and to oust said appellate court of its jurisdiction in a criminal action pending before it on appeal by discharging on habeas corpus the appellant in said action on any ground appearing upon the face of the record on appeal, and which is raised or could be raised on said appeal.' [citation]"

<u>Id.</u> at 2. This Superior Court order specifically refers to Petitioner's claim of non-confidential meetings with his counsel and notes that the claim, which is now claim 4, was addressed on the trial court record. The court's order concludes that all of Petitioner's claims could have been raised on appeal, except any post-conviction claims. Claim 2(b)--failure to admonish the jury

United States District Court<br>For the Northern District of California

United States District Court
For the Northern District of California

to ignore the pimp reference--is necessarily included in this
conclusion.  The facts relating to this claim are in the trial
record and could have been raised on appeal.  It is not a post-
conviction claim.  Thus, the state court "clearly and expressly"
explained that its judgment rested on the rule enunciated in
Dixon.

Moving forward on claims 2(b) and 4,[9] this Court performs the
two-step procedural default analysis.  For step one, Respondent
plead the existence of the Dixon procedural bar, shifting the
burden to Petitioner.  See Bennett, 322 F.3d at 586.  Petitioner,
however, did not place the adequacy or independence of the Dixon
bar at issue.  Thus, the Court proceeds to the second step.

Petitioner argues that there was "cause" for violation of the
Dixon rule and that "actual prejudice" resulted.  Coleman, 501
U.S. at 750.  Constitutionally ineffective assistance of counsel
will satisfy the cause test.  Walker v. Martel, 709 F.3d 925, 938
(9th Cir. 2013).  Where counsel is not constitutionally deficient,
"the existence of cause for a procedural default must ordinarily

_____

[9] The Superior Court's order also briefly addresses the
merits of Petitioner's claims.  Super. Ct. Habeas Denial at 2.
This alternative holding on the merits does not defeat dismissal.
See Harris, 489 U.S. at 264 n.10 ("Moreover, a state court need
not fear reaching the merits of a federal claim in an alternative
holding.  By its very definition, the adequate and independent
state ground doctrine requires the federal court to honor a state
holding that is a sufficient basis for the state court's judgment,
even when the state court also relies on federal law." (emphasis
in original)); Anselmo v. Sumner, 882 F.2d 431, 432-34 (9th Cir.
1989) (explaining that Harris "nullified the law of this circuit
that the merits of a federal constitutional claim may be reviewed
if the state court denied a habeas corpus petition on alternate
procedural and substantive grounds").

**United States District Court**
For the Northern District of California

turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." Murray v. Carrier, 477 U.S. 478, 488 (1986). Such "objective impediments" may include "that the factual or legal basis for a claim was not reasonably available to counsel, . . . or that 'some interference by officials' . . . made compliance impracticable." Id. (internal citations omitted).

Petitioner argues that his appellate counsel was constitutionally ineffective. However, appellate counsel does not have a constitutional duty to raise every non-frivolous issue requested by the defendant. Jones v. Barnes, 463 U.S. 745, 751-54 (1983). The weeding out of weaker issues is widely recognized as one of the hallmarks of effective appellate advocacy. Miller v. Keeney, 882 F.2d 1428, 1434 (9th Cir. 1989). Therefore, Petitioner's ineffective assistance of counsel claim does not satisfy the cause requirement.

Petitioner also argues that an external factor impeded his counsel's efforts. He claims that counsel "lacked the knowledge to fully foresee or formulate the basis of the evidence as a result of interference by way 'CDC' officials with opening tampering and thereof had mishandled of Petitioner documents of legal correspondences [sic]." Docket No. 54 at 7. However, any interference by prison officials that may have occurred could not have rendered compliance with Dixon impracticable. As explained above, the Superior Court stated that it addressed the issues relating to Petitioner's ability to meet with counsel during pre-trial hearings. Super. Ct. Habeas Denial at 2; see also id. at 1 (including denial of "meaningful or private meetings with his

trial counsel" in the list of issues raised before the Superior Court).  Thus, because Petitioner raised the confidential meeting issue before trial, any subsequent interference by prison officials would not have made raising the claim on direct review "impracticable."  Similarly, all facts regarding claim 2(b), failure to admonish the jury to ignore the reference to Petitioner as a pimp, were in the trial record.  Therefore, no external factor constitutes cause for procedural default.

To demonstrate prejudice, a petitioner must "shoulder the burden of showing, not merely that the errors . . . created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions."  United States v. Frady, 456 U.S. 152, 170 (1982) (emphasis in original).  Because there is no cause, this Court need not reach prejudice.

Petitioner does not carry his burden to demonstrate that claims 2(b) and 4 should be heard under the miscarriage of justice exception to procedural bars.  The exception applies where "new evidence shows 'it is more likely than not that no reasonable juror would have convicted [the petitioner].'"  McQuiggin v. Perkins, 133 S. Ct. 1924, 1933 (2013) (quoting Schlup v. Delo, 513 U.S. 298, 329 (1995)).  Such new evidence may include "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence" not presented at trial.  Larsen v. Soto, 742 F.3d 1083, 1095 (9th Cir. 2013) (quoting Schlup, 513 U.S. at 324). This new evidence must "convincingly undermine the State's case." Id. at 1096.  Because Petitioner has not satisfied this standard, he has not demonstrated miscarriage of justice.

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

Because Petitioner does not demonstrate cause and prejudice or miscarriage of justice, claims 2(b) and 4 are procedurally barred.

Respondent argues that claim 5(b), insufficient evidence of the victim's identity to support a conviction of kidnapping for robbery, is procedurally defaulted as untimely.  Respondent relies on the California Supreme Court's summary denial of Petitioner's 2014 petition, which contained a single citation to <u>In re Clark</u>, 5 Cal. 4th 750, 797-98 (1993).

In California, a habeas petition is untimely when filed after "substantial delay" as "measured from the time the petitioner or counsel knew, or reasonably should have known, of the information offered in support of the claim and the legal basis for the claim."  <u>Walker</u>, 562 U.S. at 312.  The Supreme Court has explained that "California courts signal that a habeas petition is denied as untimely by citing the controlling decisions, <u>i.e.</u>, <u>Clark</u> and <u>Robbins</u>."[10]  <u>Id.</u> at 310.  "A summary denial citing <u>Clark</u> and <u>Robbins</u> means that the petition is rejected as untimely" under this rule.  <u>Id.</u> at 313.  California's <u>Clark</u>/<u>Robbins</u> untimeliness rule is an adequate and independent state ground for procedural bar purposes.  <u>Lee</u>, 788 F.3d at 1129.

However, <u>Clark</u> actually stands for two possible procedural bars: untimeliness and successiveness.  The text at the California Supreme Court's pincite in its denial of Petitioner's petition enunciated California's general rule "that, absent justification for the failure to present all known claims in a single, timely

---

[10] <u>In re Robbins</u>, 18 Cal. 4th 770 (1998).

United States District Court
For the Northern District of California

petition for writ of habeas corpus, successive and/or untimely petitions will be summarily denied." Clark, 5 Cal. 4th at 797. Thus, it is not clear from the California Supreme Court's denial of Petitioner's 2014 habeas petition whether the court denied the petition based on untimeliness, which is adequate and independent, or only on successiveness, which Respondent did not address. See Bodnar v. Davis, 2014 WL 794575 at *19 (C.D. Cal.) (explaining that, where the Clark pincite at issue clearly indicated that it was referring to the successiveness bar, rather than the untimeliness bar, respondent's use of the Supreme Court's Walker decision, which only discussed untimeliness, was insufficient to meet its initial burden).

Further, the United States Supreme Court has explained that when the California Supreme Court cites both Clark and Robbins, it is denying a habeas petition based on untimeliness. Walker, 562 U.S. at 310. Here, again, the California Supreme Court cited only Clark and not Robbins. See Marquez v. Biter, 2014 WL 1715522 at *3 n.6 (C.D. Cal.) (reasoning that the California Supreme Court's invocation of Clark and not Robbins in a denial weighs in favor of concluding that the court invoked the successiveness bar, rather than the untimeliness bar). Finally, Petitioner's 2014 habeas petition was his second habeas petition to the California Supreme Court. His 2013 petition was not denied as untimely. Resp.'s Ex. 12. Because the 2014 petition was his second habeas petition, it is plausible that the California Supreme Court was invoking a successiveness bar, rather than a timeliness bar, by citing Clark.

United States District Court
For the Northern District of California

Respondent's argument relates to untimeliness alone.  Thus, Respondent has failed to meet his burden.[11]

B. Exhaustion

Respondent also argues that claims 1(a) through (c), 3(b) and 6 should be dismissed as unexhausted.  Because this Court granted Petitioner's motion to withdraw above, claim 1(a) and part of claim 1(c) are no longer at issue.

Prisoners in state custody who wish to challenge collaterally in federal habeas proceedings either the fact or length of their confinement are required first to exhaust state judicial remedies, either on direct appeal or through collateral proceedings, by presenting the highest state court available with a fair opportunity to rule on the merits of each and every claim they seek to raise in federal court.  See 28 U.S.C. § 2254(b), (c). California habeas petitioners are "required to exhaust . . . habeas claims in a petition for review to the California Supreme Court." Gatlin v. Madding, 189 F.3d 882, 888 (9th Cir. 1999). "To satisfy this requirement, a petitioner must 'fairly present' the substance of his claim to the state court." Id. at 887 (quoting Picard v. Connor, 404 U.S. 270, 275 (1971)).  The claim must include "reference to a specific federal constitutional

[11] On November 27, 2015, Petitioner filed a document entitled "Order for Amendment to Default on Procedural Bars" to which he attached documents in support of his opposition to Respondent's procedural bar arguments.  Petitioner referred to claims 1(b) and (c), 4 and 5(b).  Of those, only claim 4 was procedurally defaulted.  Petitioner attaches news articles, as well as prior California Supreme Court petition amendments dated January and December 2013.  Because Petitioner failed to raise claim 4 on his direct appeal, which was resolved on August 22, 2012, Petitioner's filings are not persuasive.

guarantee, as well as a statement of the facts which entitle the petitioner to relief." Id. at 888 (quoting Gray v. Netherland, 518 U.S. 152, 162-63 (1996)). "A claim is not 'fairly presented' if the state court 'must read beyond a petition or brief . . . in order to find material' that alerts it to the presence of a claim." Wooten v. Kirkland, 540 F.3d 1019, 1025 (9th Cir. 2008) (quoting Baldwin v. Reese, 541 U.S. 27, 32 (2004)).

Petitioner fairly presented claims 1(b) and (c) and 3(b) to the California Supreme Court. That court received a document Petitioner filed entitled "Amendment of Writ of Habeas Corpus Petition" on March 28, 2014, Docket No. 54 at 28-38, before the court denied his petition summarily on April 9, 2014, Resp.'s Ex. 14. This amended petition explicitly mentioned "ineffective assistance of the trial attorney in failure to submit a 995 motion to dismiss on insufficient evidence of 'Wendy Zhang' identity," (claim 1(b)) as well as Petitioner's appellate counsel's ineffectiveness for failure to raise this error on direct appeal (claim 1(c)). Docket No. 54 at 29-30. In addition to claim 1(b) and (c), claim 3(b) was also fairly raised in this document. In the context of discussing the evidence pertaining to Wendy Zhang's identity, Petitioner alleged that the prosecution "was knowingly using false testimony to obtain the guilty verdict." Id. at 32. Thus, Petitioner exhausted claims 1(b), 1(c) and 3(b).

Petitioner also exhausted claim 6, cumulative error, by presenting it to the California Supreme Court. Resp.'s Ex. 9 at 39. The Ninth Circuit has held that even explicitly mentioning cumulative error may not be sufficient to exhaust the claim. Wooten, 540 F.3d at 1026. Specifically, such a claim was not

**United States District Court**
For the Northern District of California

exhausted where "cumulative error was not labeled as an issue in the brief's table of contents and the petitioner did not argue cumulative error or cite any authority on cumulative error." <u>Id.</u> This petition is distinguishable. In Petitioner's petition, cumulative error received its own argument heading. Further, Petitioner cited supporting case law. Resp.'s Ex. 9 at 39. Thus, Petitioner did exhaust claim 6.

Respondent's main argument as to why claim 6 is unexhausted is that Petitioner did not raise "this particular claim of cumulative error" because, before the California Supreme Court, Petitioner raised "the cumulative effect of a different set of claimed errors." Docket No. 49 at 9. Respondent cites no legal basis for this argument, and this Court could find nothing to support it.

Because the Court concludes that these claims were properly exhausted, the Court DENIES Petitioner's requests for abeyance to exhaust these claims (Docket Nos. 70 and 73).

Respondent's motion to dismiss is GRANTED in part. Claims 2(b) and 4 are dismissed as procedurally defaulted.

CONCLUSION

Based on the foregoing, the Court orders as follows:

1. Petitioner's "Motions of (a) Judges order for of Stipulations of grounds 2&3 doc 25, p. 5-13" (Docket No. 37) is GRANTED.

2. Petitioner's motion to issue subpoenas (Docket No. 44) is DENIED.

3. Petitioner's motion for an order "of retracking and excluding of portions of Exhibit Z(7)" (Docket No. 45) is DENIED.

4. Petitioner's motion "for having Exhibit Z(7) stricken from record or of retracked filed under of seal" (Docket No. 52) is DENIED.

5. Petitioner's motions for leave to file under seal (Docket Nos. 59 and 63) are GRANTED.

6. Petitioner's "Request for Default of Motion to Dismiss" (Docket No. 60) is DENIED.

7. Petitioner's "Motion to Dismiss" claim 1(a) and the related portion of claim 1(c) (Docket No. 65) is GRANTED.

8. Petitioner's "Request for Correction of Records of Attorney General's Errors of Grounds 3(b)" (Docket No. 66) is DENIED.

9. Petitioner's motions for order of abeyance (Docket Nos. 70 and 73) are DENIED.

10. Respondent's Motion to Dismiss (Docket No. 49) is GRANTED in part. Claims 2(b) and 4 are dismissed as procedurally defaulted. In all other respects, the motion to dismiss is DENIED. The remaining claims are claims 1(b), 1(c), 2(a), 2(c), 3(a), 3(b), 5(a), 5(b) and 6.

11. No later than sixty days from the date of this Order, Respondent shall file with this Court and serve upon Petitioner an Answer conforming in all respects to Rule 5 of the Rules Governing Section 2254 Cases, showing cause why a writ of habeas corpus should not be issued. Respondent shall file with the Answer all portions of the

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1    state record that have been transcribed previously and are

2    relevant to a determination of the issues presented by the

3    petition.  In an abundance of caution, Respondent may

4    answer Claims 2(b) and 4 on their merits.  If Petitioner

5    wishes to respond to the Answer, he shall do so by filing

6    a Traverse with the Court and serving it on Respondent no

7    later than thirty days from his receipt of the Answer.  If

8    he does not do so, the petition will be deemed submitted

9    and ready for decision on the date the Traverse is due.

10

11    IT IS SO ORDERED.

12

13



14   Dated: March 9, 2016              CLAUDIA WILKEN

15                                     United States District Judge